Please call the last case of the day. Thank you. May it please the court, counsel, my name is John Popelka. I'm here on behalf of Santos Morin. The only issue before you today is the issue of penalties and attorney's fees. The commission failed to award penalties and attorney's fees, as did the arbitrator. It was the commission's reasoning which is why we are here. The commission found that the petitioner failed to prove that the respondent acted in an unreasonable and unreasonable manner. The law states that the burden is upon the respondent to show the reasonableness of its conduct. So our penalty petition is two-pronged, our penalty claim. The first is on a period of benefits that were paid six months into the claim. That was the first date that any benefits were paid. Prior to that, the claimant tried before arbitrator DeVrent. He found that although the claimant had a preexisting degenerative condition, it was aggravated and accelerated by that accident, causally related, found that his sedentary restrictions were related, and the case was never appealed by the respondent. The claimant was working for the city, his prior employer, under light-duty restrictions at the time this second accident occurred. When the second accident occurred, he was working as a dispatcher. He got up, tripped over some wires, fell onto his knees and his hands, once again injured his low back and his knees. The period of time between, he worked for about a year for the city before this second accident. He had never sought any medical care. He was taking over-the-counter Tylenol. He had never taken any time off work due to the condition of his knees or his low back. In the prior proceeding, the commission or the arbitrator's award mentioned that Dr. Koh and Dr. Madej, the occupational specialist, my expert, and the treating physician, had both indicated that if the claimant's condition had worsened, if his symptoms became worse, he may become a candidate for bilateral knee replacement surgery in the future. As I mentioned, he worked for a full year without seeing a doctor and without missing time from work, able to perform all aspects of the job. He injures himself here within three months of that accident. On the first day that he sees Dr. Madej, the first time that he's allowed to go back to Dr. Madej, who he was referred to by Mercy Works, the city's doctors, Dr. Madej says, there's a new symptom here. He has a catching in his knee that he did not have before, and he has far more pain. I recommend MRIs. The MRIs are done, and two weeks later he sees Dr. Madej. This is when Dr. Madej says he now needs to have bilateral knee replacement surgery as a result of these new symptoms. He sends Mr. Morin over to his partner, Dr. Nelson, the same day, and Dr. Nelson concurs. What's important is both of those doctors were the treating physicians in the first claim. They knew his condition when they had last released him, and they knew his condition and had remarked that it had changed, there was this new incident. Fast forward in time to six months after the accident, that's the date of the first payment of any compensation to Mr. Morin. Accident was never in dispute on this case, only causation and entitlement to TTD. Now, you're seeking penalties under 19L and K, right? Correct. Okay. So 19L, as we know, it's in the nature of a late fee. It occurs if the employer can not show adequate justification for the delay, and the standard is reasonableness. Correct. So you've got the employer aware of the preexisting degenerative condition to prior accidents, and they're pointing to, I believe, Cole was your claimant's doctor, right? Correct, on both cases. And it talks about Hiyoto Pine previously that the claimant could require total bilateral knee replacements in the future if there's no ---- If his condition worsens. Okay. So they have no reasonable basis then for disputing this based on all of this you're saying? None. Except the commission found they did. The commission did not ---- I don't know that the commission did. Yes, the commission did. Because you're not being fair with us when you're telling us what the commission did. The commission made the statement that you said, but it also said it adopted the findings of the arbitrator on the issue of penalties. Here's what the arbitrator had to say. The arbitrator finds that the Petitioner's concerned condition of ill-being is not causally related to the December 18, 2008 work accident. The arbitrator finds that a real controversy existed with regard to the Petitioner's entitlement to TTD and medical benefits. As such, Respondent was acting in good faith and shall not be subject to penalties and fees. In further support, the arbitrator recognized that the Respondent was actually aware of the Petitioner's preexisting degenerative conditions in prior work compensation claims when the December 18, 2000 accident occurred, as several prior claims had been filed against the Respondent. The Respondent was also aware of Petitioner's December 7th, or December 2007 IME report from Dr. Koh, in which Dr. Koh opined that Petitioner would likely require a total knee replacement as a result of the prior work compensation injuries. Respondent's causal connection dispute with regard to the Petitioner's need for treatment, including total knee replacement, was therefore based upon Petitioner's own expert opinion and was a good faith dispute based upon a real controversy. Petitioner's belief that the December 18, 2008 accident was not the cause of the Petitioner's need for ongoing treatment and a total knee replacement was a conclusion that a reasonable person in the employer's position would have made based upon the facts available to the Respondent when the accident occurred. They go on to say, Respondent acted reasonably in relying upon the opinions of Petitioner's expert from the prior worker's compensation claims as well as the Respondent's IME reports from Dr. Rob and Dr. Weiner obtained in connection with the December 18, 2008 accident. Goes on to say, Respondent's dispute of the claim is based upon critical medical evidence. Dispute in nonpayment benefits was not unreasonable or vexatious and not merely frivolous or delayed. In its opinion, what the Commission said was very simple. Page 9. Open page. Okay. The Commission finds that while the evidence above finds Petitioner proved ongoing causal connection and his entitlement to temporary total disability benefits and medical expenses and prospective medical care, Respondent's evidence is that they had clear issues of ongoing compensability to terminate benefits and as such, Petitioner failed to prove that the Respondent acted in an unreasonable and vexatious manner to support imposition of penalties and attorney's fees. Now, that's true, but you forget the next sentence. The Commission finds the decision of the arbitrator was not contrary to the weight of the evidence and hereby affirms and adopts the arbitrator's findings as to the denial of penalties and fees. So this isn't simply a case of the Commission saying you didn't prove you were entitled to the penalties and fees. This is a case where they adopted the arbitrator's findings that the Respondent proved that they had a reasonable excuse for not making the payment. And you have to be candid with us when you tell us exactly what their finding is. I didn't think I was not being candid with you. You're telling us that they used the wrong measure of proof. They said you didn't prove that they were entitled to the penalties and fees. By adopting and affirming the arbitrator's findings on the denial, they affirmed and adopted a finding that there was proof by the Respondent that they acted reasonably. That is the burden. Okay. I will address that. Rule 7110.70 of the Rules Governing Practice gives the employer 14 days to do one of three things. You either have to pay TTD benefits, they have to indicate in writing that more information is needed, or they have to provide a written explanation why they're denying benefits. Now, let's assume they didn't comply with the rule at all. They did not. Does that basically necessarily entitle you to penalties? Yes, it does. I don't think so. You've got a case that says so? If it's not ---- Do you have a case that says so? I do not. The arbitrator in the commission found that their failure to pay benefits was reasonable based upon the opinions before them. Now, granted, they violated the rule of the commission. That doesn't mean that their refusal to pay benefits wasn't reasonable. The burden remains on them to prove the reasonableness of their conduct. According to the arbitrator, which the commission adopted, they did. I understand that, and I'm going to address that now. They did not do that until their proposed decision. The first day, the first time we ever learned why they were disputing this case was in the proposed decision. That's not reasonable. For a man who had a prior injury which was causally related and then has a second witnessed fall, that's not being disputed by the employer, and within three months of that fall is told that he now needs bilateral knee replacement surgery, when he was never ordered to have that before, and the arbitrator only said a portion of what Dr. Koh had previously said, and that's where some of the confusion comes in, it's unreasonable for them to not pay TTD benefits for six months. However, six months into the claim, they finally realized they do owe TTD benefits and they pay. So what is their explanation for waiting six months to pay this man TTD benefits? According to the commission, by adopting the arbitrator's decision, it's because they had knowledge of his prior previous workers' compensation claims and they had medical opinions that they relied on. Now, the court found, the commission found they were wrong. There was a causal connection. They didn't have it, but they also found, and it's a factual issue, that their actions were not unreasonable. And there certainly is evidence in this record to support that finding. What would that evidence be? Well, that's the arbitrator's finding, but the evidence in the record is Dr. Koh's prior report and then his second report. The prior report, Dr. Koh indicated that the need for a future bilateral knee replacement surgery would occur if the condition worsened. He did not say he needed it at the time, and that prospect of medical relief was not ordered in the first decision because he didn't need it at that time. He worked for a full year at the sedentary dispatcher job without any medical care other than over-the-counter Tylenol and no medical appointments whatsoever. He then trips, falls immediately onto his knees, and the medical record is clear. He has immediate swelling. The doctors at Mercy Works take him off work and put him on restrictions. No one is suggesting there isn't evidence in the record that would have supported a finding in the opposite direction. This is manifest weight. There is no right answer. It can go either way. It can blend therewith. Is there, but I would submit to you that even looking at this as a manifest weight issue, there is not contrary evidence, medical evidence, to support the commission's decision. I understand what the arbitrator found. He was wrong, and I'm alleging that there was not sufficient medical evidence. First of all, if they are relying on Dr. Koh's first report, it doesn't say what the arbitrator says that it said. And that's why I cited it in my brief. It said in the future he may need total knee replacement surgery if his condition worsens. The arbitrator's award in the prior case said he may need future bilateral knee replacement surgery related to this case if his condition worsens in the future. It didn't worsen. He worked for a full year and received no medical care and took over-the-counter medication. He stopped taking Vicodin. So you can't say that it was reasonable to rely on that. And even if it was reasonable, they didn't pay under that claim either. They continued to deny medical care and deny payment of benefits. He certainly would have been entitled to benefits under the prior claim. So we filed a 19-H and 8-A petition in relation to that prior claim. And they disputed that also and said that they don't owe benefits under that claim. And they said they don't owe benefits under this claim. So now you've got a boroughs versus industrial commission situation where you've got two separate insurance companies pointing the finger at each other and saying it should be the other insurance company. Well, this Court has already decided that that is an unreasonable and vexatious delay. That will support an award of 19-K penalties. Here it's the same two hands. Look, we're back to the same argument again. What's our standard of review? Our standard of review is manifest weight, is it not? It is manifest weight on the medical, yes. I still submit that they have this in the decision. You can't just ignore the statement that the Petitioner failed to prove it. Wait a minute. Hold on a second. If a Respondent introduces all sorts of evidence that he behaved reasonably and is not required to pay penalties, doesn't the Petitioner have a right to introduce evidence that he behaved unreasonably? Yes. And the commission found you didn't do it. You didn't do it. And then adopted all the findings of the arbitrator that had to do with the evidence that the Respondent presented as to why they didn't behave unreasonably. So that would be a manifest weight issue. I do not disagree with you there. I'm first looking at that first 6-month payment. There was no written statement pursuant to Rule 7110.70. I don't dispute you. But you're not coming up with any case that says a mere violation of that rule entitles you to penalties? Automatically. Automatically. If the fact finder makes a determination that the failure to pay was not unreasonable, you've got a base violation of a rule, and the rule carries with it no penalty. Okay. Then let me address it this way. They did eventually get an independent medical evaluation by Dr. David Robb, who had also seen the claimant in the prior case. Dr. Robb came up with two separate conclusions concerning the claimant. The first is he suffered a temporary aggravation of a longstanding history of preexisting degenerative arthritis sinuses, a temporary aggravation. He concluded that within 6 months. There is no basis to show that it was only a temporary aggravation, and the commission did not spare any words in disagreeing with Dr. Robb's opinion. They basically said there's absolutely no basis to find. Hold on. I don't disagree with you on the issue of causation. You want it. The arbitrator found Dr. Robb opined that the petitioner's need for bilateral knee surgery was causally related to the preexisting degenerative condition, not the December 28th accident. Robb stated that the December 28th accident resulted in a temporary aggravation of a preexisting condition. As respondents' dispute of this claim is based upon credible medical evidence, the dispute in nonpayment of benefits was not unreasonably vexatious and was not merely frivolous or for delay. Now, the commission later turns around and says, we disagree with Robb. We think Robb's wrong. He's dead wrong. But does that mean that the respondent couldn't rely on the opinion they got from him? That opinion is not in the record. The opinion of Dr. Koh you're referring to in the prior case? No, Dr. Robb. I just read you the finding on Dr. Robb. The question now becomes, was it reasonable for them to rely on Dr. Robb? That's what the Supreme Court said in City of Chicago v. Industrial Commission. You then look at the reasonableness of the conduct of the employer in relying on that report. The fact that they have it in the report is not enough. Who makes the decision as to whether it was reasonable? You do today. No, we don't. Today you make that decision because we're bringing that issue to you. This is not a DeNova review. If it was a DeNova review, all of your arguments would be great. We'd be the fact finder. We weren't. Even on a manifest weight question, I still have the right to present my opinion. You have the right to present it. Well, I can, yes, and I would like to do that. By saying that Dr. Robb's opinion, that we're not even reasonable in relying on Dr. Robb's opinion for two reasons. First of all, he says it's a temporary aggravation. There's no basis to find that it's a temporary aggravation. If you look at the chronology of the medical care, he's seen at Mercy Works. He's referred on to his own doctor, Dr. Sheff, who takes him off work. He's referred to pain management. He gets an injection in his knee. He has three hours of relief. There's no lead up to the symptoms whatsoever. Let's forget about Robb for a second. I just have one final question. Let's talk about what is in the record. At arbitration, evidence was introduced, including Dr. Cole's December 2007 opinion. We can all agree it preceded the date of the accident in question. Dr. Cole opined the claimant's low back and bilateral knee symptoms and impairments at that time related to the October 2005 accident. Claimant's injuries from that accident caused permanent partial disability to the person as a whole with additional disability to both legs. This is not your usual case, okay? Here's a man with a number of surgeries even before the 2005 accident. You've got your claimant's own doctor talking about permanent partial disability and permanent injuries to both legs, and you're saying the employer has no basis to consider it? No, they have a basis to consider it, but what they're saying, as a matter of fact, they're bound by it. They're bound by the finding in that prior decision that this is not just some longstanding degenerative condition. It's a longstanding degenerative condition that was aggravated by this prior accident, and as of that time, that condition is now related to that first accident. They didn't pay him under that accident either. They're saying we're not going to pay you under the first accident, we're not going to pay you under the second accident, even though our argument on each of those is in accident number two, we're blaming it on number one. In accident number one, the 8A19H, we're blaming it on a longstanding degenerative condition, which is what Dr. Rob said, which there's no basis for because they're bound by the law of the case in the first case. So you've got a man who's out of work for six months, not getting paid any TTD benefits, because the same hand, the arms from the same torso are pointing back at each other. It's due to the first, it's due to the second, and he gets nothing? Well, it's not really that, though, is it? It's not the Bono situation that you're talking about, where it's two different parties, one of whom is responsible. Right. Here you're talking about, in your positing of the issue, two accidents, and you're saying it has to be attributable to one or the other, and the employer here is saying there was, there is no causation to this accident, may not be to the other one either. It could be from the one, four accidents ago. I mean, there were six claims total.  Is that not addressed, though, by the first decision that says that the prior degenerative condition that he did have from all these prior injuries, which were part of that record, were aggravated and accelerated by that first accident, the 06 case, and that his current condition of ill-being as of the date of that decision, about a year prior to this injury, is now causally related to that accident? That's gone. That long-standing, pre-existing degenerative condition defense no longer exists with the first decision. So they're back. I'm sorry. Your time is up. I'm in reply. Thank you. Counsel, you may respond. May it please the Court. David Larson on behalf of the City of Chicago. As counsel already indicated, the issue before the Court today is a question of whether to award penalties and fees in this case. I'm here today to ask this Court to affirm the circuit court's decision that confirmed the commission's decision to deny penalties and fees in this case. The question of whether to award penalties and fees presents a factual question, and the findings of the commission shall not be disturbed unless they are against the manifest weight of the evidence. Tell us why it was reasonable. We know the standings. Why was it reasonable to deny? The record clearly supports the commission's denial of penalties and fees. The denial of penalties and fees is proper if the employer's nonpayment of benefits is based on a reasonable and good-faith challenge to liability. As was previously acknowledged, the arbitrator found and the commission affirmed that the respondent acted reasonably and in good faith in challenging liability in this case. Based on what? At the outset, the defendant challenged liability for the plaintiff's injury based on its knowledge of the plaintiff's prior workers' compensation claims and preexisting degenerative condition.  The plaintiff's claim was that the plaintiff had a prior client for which he obtained settlements and awards for loss of use of the bilateral legs. These are the body parts at issue in this case. These prior claims gave the defendant knowledge of the plaintiff's extensive medical history prior to the accident in December 2008. Specifically, the defendant relied on an opinion disputing causal connection Excuse me. So how does just having knowledge of prior injury make it more reasonable to assume that it's because of the prior injury and not an aggravation of the preexisting injury? There was a specific opinion which was already addressed in this case, that of Dr. Coe, the examining physician for the plaintiff in this case. He indicated that the plaintiff would likely require total knee replacement as a result of his prior workers' compensation injuries. And the respondent So the employer doesn't have to go get a new medical opinion, is what you're arguing. You can rely on one from two or three years ago that projected out that someday he might have to have knee replacement surgery. Deny any benefits and go on that. Well, at the outset the defendant did rely on this opinion that was prior to the accident at issue. And you've got to look at it through the lens of reasonableness. There's no definitive procedure, definitive answer to the question. It's reasonableness of the delay, correct? Correct. Sometimes subsequent you went and got an opinion from RAB. Correct. When did that happen? That happened in May of 2009. That was how long after the accident? That was roughly six months after the accident. And RAB said? Dr. RAB opined that there was not a causal connection between the petitioner's work accident in December 2008 and the petitioner's current condition of well-being. So it was six months before the employer started paying? Correct. And that was after RAB said no causal connection? Correct. So why did the employer start paying then? Again, it was relying on its prior knowledge of the petitioner's previous injuries, extensive medical history for the body parts at issue, and then ultimately relying on this opinion that there was not a causal connection. If it was in May of 2008, why did they start paying? The opposite might be true to the conclusion of your argument. Why did they start paying? I'm unsure as to why the ---- I mean, acting on the same information that they had before, only additional information that supported the employer, they take the exact opposite tact and start paying. Correct, yes. So ---- Okay. I'm sorry. I don't have a hard time understanding. But going back, it was not unreasonable during that delay in payment for them to rely on the petitioner's preexisting history of injury to his bilateral knees and also this opinion, albeit a short period, where they relied on Dr. Robb's opinion indicating that there was not a causal connection and the petitioner's injuries related to his longstanding history of degenerative arthritis. Okay. Let me ask another question. Did the claimant file a petition for penalties during that first 6 months? I believe the petition was filed along with the 19B petition. What I'm trying to get at is, I mean, did the city start paying in response to getting a petition for penalties? I am unaware. I do not ---- I'm just wondering, okay. Do you want to tell us succinctly your best argument as to why we should oppose the Commission's decision? Ultimately, generally, the denial of penalties and fees is warranted when the employer acts in reliance upon a reasonable medical opinion. In this case, the Respondent, the Defendant, excuse me, reasonably relied on the opinion of Dr. Robb, who indicated that there was not a causal connection between the petitioner's work accident. Correct. What about that period prior? Again, the Defendant at the outset initially relied on their knowledge of the petitioner's various prior claims related to the body parts at issue and this opinion from Dr. Coe indicating that at some point the petitioner was going to require total knee replacements, which ended up being the recommended surgery, because of his prior workers' compensation injuries to the bilateral knees, injuries that occurred prior to the accident at issue. I would just like to make one last point. The standard for awarding penalties and fees under Section 19K, Section 16 is higher because they require more than unreasonable delay in payment of benefits. Additionally, the imposition of penalties under Section 19K and fees under Section 16 is discretionary. Consequently, the Court's review of the Commission's denial of penalties and fees under Sections 19K and Section 16 involves not only determination of whether the Commission's findings are against the manifest weight of the evidence, but also determination of whether the Commission abused its discretion. In determining whether there has been an abuse of discretion, we look to see whether a reasonable person could reach, excuse me, standard is no reasonable person could reach the findings of the Commission. Here, as was previously indicated, the arbitrator in his decision, which the Commission affirmed and adopted, noted that the Respondent's causal connection dispute with regards to the petitioner's need for treatment, including total knee replacement, was basically based upon the petitioner's own expert opinion. It was a good faith dispute based upon a real controversy. The arbitrator went on to say that the Respondent's belief that the December 18, 2008 accident was not the cause of the petitioner's need for ongoing treatment and a total knee replacement was a conclusion that a reasonable person in the employer's position would have made based upon the facts available to the Respondent when the accident occurred. Therefore, the Commission was well within its discretion in denying penalties and fees under sections 19K and section 16. For all these reasons stated, a defendant asks this Court to affirm the circuit court's decision that confirmed the Commission's decision to deny penalties and fees in this case. Thank you. Thank you, counsel. Counsel may reply. Counsel, do you know when you filed your petition for penalties and fees? It was either in March or May of 2009. It was done immediately. I believe it was done in March. I looked at the Commission website earlier today. It is listed there under the motions, but I don't recall that date. So counsel, with all due respect to counsel, he did not try the case, file the briefs, or have any involvement in this appeal up until doing the orals. The attorney who handled it is on maternity leave right now. I can give you the insight on to what happened. They did not pay after the Dr. Robb report. They paid before the Dr. Robb report. I filed my petition for penalties, fees in 19B and 8A, and we were before the arbitrator. At no time was there any argument that they were relying on Dr. Coe. Again, that only came in the proposed decision. They wanted the opportunity to get an independent medical evaluation with Dr. Robb and buy some time. The arbitrator said he's gone to Mercy Works. Mercy Works sent him to Midland. These are the city's facilities. Your doctors give causation. You don't have any basis not to pay him. If you wanted to continue the case to get Dr. Robb's evaluation, pay the man. So they paid him, six months. Saw Dr. Robb two weeks later, and then Dr. Robb gave his opinion. They paid him for two weeks. They paid him six months, and they paid him those two weeks between the six-month payment and the two weeks later when he saw Dr. Robb. Then they terminated the benefits again based on Dr. Robb, which is the second part of my penalty argument. Once they had Dr. Robb's opinion, they terminated TTD based on Dr. Robb, not on Dr. Coe, on Dr. Robb, who said it was a temporary aggravation. There's no evidence to support that. If you look at his report, he didn't even have the medical records to review. He didn't review the Mercy Works records or the records from Dr. Madej, Dr. Sheff, or the pain management doctor who did the injection that didn't work. And he concluded the man was at MMI. Well, of course he would. He didn't look at the treating records. If he would have seen that he had an injection just two months before seeing him, and the injection lasted three hours, he might have had a different opinion. Is that a reasonable basis to deny the claim? No. The second prong of his opinion is it's a longstanding degenerative condition. This is just the natural progression of his degenerative condition. It wasn't, based on the law of the case of the prior. That's knocked out completely, and they knew that. They knew that it couldn't be due to a longstanding condition. And they also knew that there was no temporary aggravation because their doctors send the records to them as they see the claimant. It's Mercy Works. The claimant is seen, and they're immediately emailed to the city, to whoever's over at the Committee on Finance. They knew that there was no temporary aggravation and that he wasn't at MMI. Dr. Madej concluded he's got this new catching that he never had before. And based on that, I feel he needs bilateral knee replacement surgery. Didn't say it in the prior claim, even though he was the surgeon there. He just said someday this man will need it. Nobody ever said he needed it prior. The only time, contrary to what the arbitrator found, that there was any claim that Dr. Coe was the basis for them was in the proposed decision. Now, that's why the rule needs to be followed, and that's why perhaps this should be the case that says, if they don't follow 7110.70 and give a written explanation, when the clear language says they shall do that within 14 days, should be enforced here. Because they weren't basing it on anything initially, because they didn't have any basis. The arbitrator concluded that by forcing them to give us the six months. They then relied on Dr. Rob. We would know what they relied on, and it is their burden to show the reasonableness of their conduct. They didn't do it by complying with 7110.70. So what's the benefit of that rule if they don't have to comply with it? And it emboldens the city. The city didn't appeal the circuit court decision, the circuit court affirmance. They did appeal the commission decision to the circuit court, but they didn't bring it to this level. Nevertheless, they're not paying the award. Why? They're not contesting causal connection anymore, because they don't get penalties against them when they don't pay. That's the only reason. And so today, this man is owed $187,000 in an accrued award, but they won't pay him. There's a specific case that says penalties are proper in that situation. I don't remember the name of it. I agree. And that petition is pending before the commission now. They're holding off on that until you decide your case. Well, I mean, but they're two different issues. They are. They're two entirely different issues. If the City of Chicago is refusing to pay an award that they didn't appeal, then there is a basis for a remedy there, and it's penalties. I agree it's a different issue. I'm just saying they're emboldened by not being penalized in a situation such as the one before you. But, you know, we hear these arguments send a message all the time. We're not here to send a message. I'm not saying send a message. We're here to decide individual cases, not to spank people for bad behavior in the past. Make them comply with the rules. If they comply with the rules, next time maybe they comply with the rules if they pay penalties for waiting six months when there's no basis, and for relying on a report like Dr. Robb's that gives them no basis to deny the claim. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement and written disposition until issued. Have a good evening. The court will convene at 8.30 tomorrow morning.